Richard J. Gonzales, Esq.
State Bar No.: 004505 / PCC No.: 21380
THE GONZALES LAW FIRM, P.C.
Attorneys at Law
33 North Stone Avenue, Suite 1410
Tucson, Arizona 85701-1404
(520) 327-1121/ FAX (520) 327-1667
ATTORNEYS FOR: Plaintiffs

Federico Castelan Sayre, Esq. (SBN 067420)
Kent M. Henderson, Esq. (SBN 139530)
Michael J. Carey, Esq. (SBN 249171)
LAW OFFICES OF FEDERICO CASTELAN SAYRE
900 N. Broadway, 4th Floor
Santa Ana, California 92701
(714)550-9117/Fax (714)550-9125
ATTORNEYS FOR: Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RENATO ARIZA DOMINGUEZ and MARIA CLARA LEONOR RIVERA CORDERO as surviving parents of decedent, Francisco Javier Dominguez Rivera, and as successors in interest,<br><br>Plaintiffs,<br><br>vs.<br><br>NICHOLAS WILLIAM CORBETT,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br>(Bivens Action - Civil Rights)<br><br>JURY TRIAL REQUESTED |

Plaintiffs for their cause of action, allege as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over plaintiffs' claims, pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388, because the named defendant, while acting in his capacity as an officer of the United States government, violated the constitutional rights of Francisco Javier Dominguez Rivera and plaintiffs, as more fully set forth hereafter.  The jurisdiction of

this Court is, therefore, founded on federal question jurisdiction pursuant to 28 U.S.C. §1331.

2. Venue is proper in the United States District Court, District of Arizona, Tucson Division, pursuant to 28 U.S.C. §1891(a)(2), because all acts, occurrences and injuries complained of herein were caused and suffered in Cochise County, State of Arizona.

## PARTIES

3. At all relevant times, Plaintiffs RENATO ARIZA DOMINGUEZ and MARIA CLARA LEONOR RIVERA CORDERO were and are citizens of the Republic of Mexico and are the surviving parents of the decedent Francisco Javier Dominguez Rivera and his successors in interest. Plaintiffs claim damages under *Bivens* for any and all actual, compensatory and punitive damages to which they are entitled by Federal law including loss of love, aid, comfort and society, loss of the value of decedent's life, decedent's pain and suffering, attorney fees and costs according to proof at the time of trial.

4. At all material times mentioned herein, Defendant Nicholas William Corbett (hereinafter referred to as "CORBETT"); was a resident of Cochise County in the State of Arizona and was employed by the United States Border Patrol.

5. At all relevant times CORBETT, was an investigative or law enforcement officer, as defined in 28 U.S.C. sec. 2680(h), and acting within the course and scope of his employment with the United States Border Patrol. Defendant CORBETT is sued in his individual capacity as a federal officer within the meaning and scope of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* 403 U.S. 388 (1971). The acts of CORBETT, were done under the color of law and pretense of the statutes, ordinances, regulations, customs and usages of the United States of America.

6. On information and belief, plaintiffs allege there are supervisory personnel within the Immigration and Customs Enforcement Agency (hereinafter "ICE"), which is a subdivision of the United States Department of Homeland Security, a subdivision of the

Complaint _ 12.9.08.wpd - 081210

2

United States Department of Justice, an agency of the United States of America who had responsibility for the implementation of personnel and firearms policies, supervision of the Douglas Border Patrol Station, and supervision of the named border patrol agent. It is believed that these individuals have personal knowledge of the facts alleged herein and have by action or inaction encouraged, permitted and condoned the unconstitutional acts of the named defendant. The true names of these individuals are not presently known to plaintiffs and shall be added as they become known.

## FACTUAL ALLEGATIONS

7. The allegations of in the preceding paragraphs are incorporated by reference as if fully set forth herein.

8. It is alleged that the United States Border Patrol has engaged in, encouraged and condoned a systematic pattern of unconstitutional use of deadly force against Mexican citizens who cross the international border between the United States and the Republic of Mexico. These unconstitutional practices and policies have been specifically applied at the Douglas Border Patrol station and have led to the unjustified and unconstitutional shooting of Mexican citizens and ultimately to the wrongful death of Francisco Javier Dominguez Rivera.

9. On January 12, 2007, at approximately 3:15 p.m., the National Guard notified the United States Border Patrol about possible undocumented persons crossing the Mexican/U.S. border, near Douglas, Arizona. United States Border Patrol Agent CORBETT, while in the course and scope of his employment with the United States Border Patrol, responded to the call and soon apprehended three men, identified as Aurelio Mendez Zamaron, Felipe Mendez Aleman and Miguel Angel Lopez Perez.

10. Defendant CORBETT approached the three men on the road, believed to be Border Road, and with his gun drawn, gave them commands in English to sit on the ground and then directed the three men to enter CORBETT's patrol vehicle. The three men complied

with CORBETT's demands without resistance. Once the three men were seated in the patrol vehicle, he immediately drove off after another group of approximately four individuals.

11. Defendant CORBETT located the four individuals and drove his patrol vehicle towards them in a reckless manner and came dangerously close to hitting them. CORBETT exited his patrol car from the driver's side, and then ran around the rear of his vehicle to confront the four individuals. The four individuals were identified as one woman, Sandra Guzman, and three (3) brothers: Rene Dominguez-Rivera, Jorge Dominguez-Rivera, and Francisco Dominguez-Rivera.

12. As CORBETT approached these individuals, Sandra Guzman (hereinafter "Sandra"); Rene Dominguez-Rivera (hereinafter "Rene") and Jorge Dominguez-Rivera (hereinafter "Jorge"), immediately assumed a kneeling or prone position. The decedent Francisco Javier Dominguez Rivera was also attempting to surrender by kneeling down when CORBETT yelled and/or hit Francisco Javier Dominguez Rivera in the head while approaching Francisco Javier Dominguez Rivera at close range.

13. Defendant CORBETT, without warning or cause, then shot and killed Francisco Javier Dominguez Rivera, execution style, within a firing range of approximately 3 to 12 inches.

14. Defendant CORBETT claims self-defense by alleging that when he arrived on scene Francisco Javier Dominguez Rivera was in the process of throwing a rock at him. Consequently, CORBETT claims he shot Francisco Javier Dominguez Rivera in self defense from a distance of at least four (4) to five (5) feet, while standing near the rear of his vehicle.

15. Defendant CORBETT also told Field Operations Supervisor Diego Granillo, that he used his vehicle for cover as Francisco Javier Dominguez Rivera *shadowed* him from the opposite side of the vehicle, and that as CORBETT came around from the rear of his patrol vehicle, he was confronted by Francisco Javier Dominguez Rivera who held a rock in an

1 elevated position.

2  16. Defendant CORBETT contends that he shot Francisco Javier Dominguez Rivera because he feared serious bodily injury or death as a result of being confronted with a rock.

17. The three material witnesses to the shooting; Jorge; Rene; and Sandra, all were individually interviewed after witnessing the January 12, 2007, shooting and all gave consistent statements which conflicted with CORBETT's claims. These witnesses admitted that they had entered the United States on the morning of January 12, 2007 and were attempting to return to Mexico when they spotted CORBETT's patrol vehicle.

18. Each of these witnesses denies that Francisco Javier Dominguez Rivera or any of them ever made any aggressive movements towards CORBETT. Each of these witnesses is anticipated to testify to the following:

a.) That they were almost struck by CORBETT's patrol vehicle;

b.) That CORBETT exited his vehicle and yelled in an angry voice while hitting or pushing Francisco Javier Dominguez Rivera as he was in the process of getting down on his knees; and,

c.) While assuming a kneeling or prone position, these witnesses saw CORBETT shoot Francisco Javier Dominguez Rivera at close range and watched Francisco Javier Dominguez Rivera die.

19. A shell casing was recovered at the scene after Francisco Javier Dominguez Rivera's body was moved. The shell was located within two to three feet from where Francisco Javier Dominguez Rivera's head had laid. This casing was determined by the Arizona Department of Public Safety Criminalist, John Maciulla, to have been fired from defendant CORBETT's service revolver.

20. Examination and analysis of the clothing worn by Francisco Javier Dominguez Rivera at the time of the January 12, 2007, shooting revealed that there was gunshot residue

in the left chest area consistent with the passage of a bullet. The bullet that killed Francisco Javier Dominguez Rivera was confirmed to be the specific ammunition from CORBETT's gun. The amount of gun powder and existing powder burns was consistent with a firing distance between 3 inches to 2 ½ feet.

21. As result of the January 12, 2007 autopsy of Francisco Javier Dominguez Rivera, the Chief Medical Examiner Guery Flores, M.D., concluded that Francisco Javier Dominguez Rivera died as a result of a single gunshot wound to the upper left portion of his chest. The autopsy report indicates that the bullet track established a downward, left to right pattern, minimally back to front, and that the bullet perforated Francisco Javier Dominguez Rivera's left upper lateral thorax, his lung, heart, diaphragm, liver, stomach and lower abdomen, resulting in Francisco Javier Dominguez Rivera's death.

22. The bullet was recovered in the lower segment of Francisco Javier Dominguez Rivera's abdomen wall. Dr. Flores testified that the pattern of the bullet is consistent with Agent CORBETT shooting Francisco Javier Dominguez Rivera from the left side and slightly to the rear of the decedent. Dr. Flores also concluded that the manner of death was homicide.

23. Prior to January 12, 2007, United States Border Patrol Supervisors, knew or should have known of the numerous ethnic, racially and/or violently motivated physical altercations that CORBETT had been responsible for before and during his employment as an United States Border Patrol Agent. United States Border Patrol Supervisors were further aware that CORBETT engaged in aggressive altercations with others that reflected a pattern that made him unsuitable to be hired and/or retained as a United States Border Patrol Agent. Despite this knowledge, United States Border Patrol Supervisors failed to recognize such discriminatory behavior on the part of CORBETT, even though it confirmed that it was inappropriate to maintain CORBETT's employment with the United States Border Patrol and this failure to terminate CORBETT's employment directly and proximately resulted in the

death of Francisco Javier Dominguez Rivera.

24.     Prior to January 12, 2007, United States Border Patrol Supervisors, knew or should have known that CORBETT was involved in several incidents of misconduct, which made him an inappropriate person to assume and/or continue in the position of United States Border Patrol Agent. These incidents include the following:

   a.) Defendant CORBETT's former neighbors will testify that CORBETT was very vocal about his hatred of Blacks and Mexicans.

   b.) In November, 2003 CORBETT assaulted his neighbor in Cheltenham, Pennsylvania. CORBETT punched his neighbor and vandalized his property while intoxicated and was charged with misdemeanor "criminal mischief".

   c.) On at least three occasions, CORBETT committed acts of domestic violence.

25.     Plaintiffs allege, upon information and belief, that it is the custom and practice for United States Border Patrol agents to shoot at Mexican citizens and for the agents to then refuse or fail to file reports about such shootings or shots fired in violation of United States Border Patrol policy. Plaintiffs further allege that the supervisors in the United States Border Patrol, are aware of this custom and practice and that it is in violation of written policies. Supervisors and officials of the United States Border Patrol have refused and failed to take any appropriate steps for violation of firearms policy, thereby tacitly condoning disregard of written policies by the agents.

26.     The shooting incident on January 12, 2007, including the shooting death of Francisco Javier Dominguez Rivera, are part of an ongoing pattern and practice of wrongful and negligent use of firearms by United States Border Patrol agents. The custom and practice by these agents is to shoot at any persons encountered in the general vicinity of the United States-Mexico border, without regard to whether the agents are in any danger or whether the suspect individuals are armed or engaged in any illegal activity. The practical effect of this

1  custom and practice is to shoot first and ask questions later if anyone survives.

2    27. Plaintiffs allege, upon information and belief, that a significantly higher number of shootings have in fact occurred along the international border between the United States and Mexico, however, those shootings and other acts of physical and verbal abuse of Mexican citizens have gone unreported by United States Border Patrol agents. The United States Border Patrol have had reason to know of the significant number of unreported incidents and have failed to investigate the information concerning abuses by their agents.

  28. The supervisors at the Douglas Border Patrol station knew or should have known of the pattern of shootings and other abuses in violation of written policies.

### COUNT ONE

  29. The allegations of in the preceding paragraphs are incorporated by reference as if fully set forth herein.

  30. Defendant CORBETT violated plaintiffs' constitutional rights by wrongfully and unconstitutionally causing the death of Francisco Javier Dominguez Rivera in violation of the Fourth and Fifth Amendments to the United States Constitution.

### COUNT TWO

  31. The allegations of in the preceding paragraphs are incorporated by reference as if fully set forth herein.

  32. Plaintiffs allege, on information and belief, that supervisory personnel from the United States Border Patrol have condoned, authorized and ratified a custom and practice whereby United States Border Patrol agents are allowed to shoot at unarmed Mexican nationals in violation of the United States Constitution and the written policies and procedures of said agencies without thorough investigation or threat of discipline.

  33. As a direct and proximate result of this unconstitutional custom and practice, defendant CORBETT shot and killed Francisco Javier Dominguez Rivera.

34.   Plaintiffs allege that this unconstitutional custom and practice, fostered by supervisory personnel of the United States Border Patrol, is in violation of the United States Constitution, have deprived plaintiffs of their Fourth and Fifth Amendment rights under the Constitution.

## CONCLUSION

WHEREFORE, Plaintiffs request a jury trial and pray for judgment against the defendant(s), holding defendant(s) jointly and severally liable, and awarding plaintiffs all actual, compensatory and punitive damages to which they are entitled by law, their attorney's fees and costs incurred herein, and such other and further relief as the Court may deem just and proper.

DATED this 10th day of December, 2008.

**THE GONZALES LAW FIRM, P.C.**
**LAW OFFICES OF FEDERICO CASTELAN SAYRE**

_____
Richard J. Gonzales
Attorneys for Plaintiffs